# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL MCFARLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-CV-67 PLC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner of Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Crystal McFarland ("Plaintiff") seeks review of the decision of Defendant Nancy Berryhill, Deputy Commissioner of Operations, Social Security Administration (SSA), denying her applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act.[1] Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's applications.

## I.    Background

In April 2014, Plaintiff, then forty-eight years old, filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging she was disabled as of October 12, 2013, due to: pain; rheumatoid arthritis; degenerative disc disease; major depressive disorder and anxiety; chronic fatigue syndrome and hypothyroid; interstitial cystitis; irritable bowel syndrome ("IBS"); asthma; "blockage in heart"; and carpal tunnel syndrome.[2]  (Tr. 318-19) The

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [ECF No. 8]

[2] Plaintiff filed claims for DIB and SSI on two prior occasions. By decision dated October 4, 2011, an ALJ determined that Plaintiff had severe impairments of degenerative disc disease of the thoracic spine and fibromyalgia. (Tr. 270-286) By a decision dated October 11, 2013, an ALJ

Social Security Administration (SSA) denied Plaintiff's claims, and she filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 367-68) The SSA granted Plaintiff's request for review and conducted a hearing on February 2, 2015. (Tr. 41-97)

In a decision dated May 25, 2016, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since October 12, 2013. (Tr. 21-22) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council and submitted additional medical evidence.[3] (Tr. 1-7) The Appeals Council found that Plaintiff's more recent medical records did "not show a reasonable probability that it would change the outcome of the decision," and it denied review. (Tr. 1-2) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

With respect to the medical records and other evidence of record, the Court adopts Plaintiff's recitation of facts set forth in her Statement of Uncontroverted Facts, which Defendant admitted in its entirety. [ECF Nos. 17-1, 22-1] The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## II.     *Standards for Determining Disability Under the Act*

---

determined that Plaintiff had the severe impairments of obesity, interstitial cystitis, depression, anxiety, fibromyalgia, status-post carpal tunnel surgery with morning stiffness, and degenerative disc disease of the lumbar, thoracic, and cervical spines. (Tr. 287-309) In both prior proceedings, the ALJs concluded that Plaintiff's impairments were not disabling. (Tr. 270-86, 287-309)

[3] The administrative record includes the evidence submitted to the SSA Appeals Council after the ALJ's decision. "In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." Berhmann v. Apfel, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing Jenkins v. Apfel, 196 F.3d 922, 924 (8th Cir. 1999)). "In such a situation, '[a] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.'" Id. (quoting Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994)).

Eligibility for disability benefits under the Act requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

### III.  Discussion

Plaintiff claims that substantial evidence does not support the ALJ's decision because the ALJ: (1) failed to properly consider the treating physician's medical opinion evidence when formulating her residual functional capacity (RFC); and (2) "did not give adequate weight to the state agency's determination that Plaintiff is permanently and total disabled." [ECF No. 17 at 14] Defendant counters that the ALJ properly considered Plaintiff's medical opinion evidence and Medicaid eligibility. [ECF No. 22]

*A. Standard of Judicial Review*

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

*B. Treating physician*

Plaintiff asserts the ALJ erred "by not properly considering and in fact misstating the treating physician's opinion evidence[.]"[4] [ECF No. 17 at 11]  More specifically, Plaintiff claims that the ALJ gave insufficient weight to the opinion of Dr. Jonathan Wilford and mischaracterized his statement that Plaintiff would need to lie down two to three times a day.  In response, Defendant maintains that the medical evidence did not support the "drastic functional limitations" identified in Dr. Wilford's opinion.

A treating physician's opinion regarding a claimant's impairments is entitled to controlling weight where "the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Even if the opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight. Id. This rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians. See 20 C.F.R. §§ 404.1527, 416.927; Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as [a] whole." Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (quotation omitted).

If an ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider the following factors in determining the appropriate weight: length and frequency of the treatment relationship; nature and extent of the treatment relationship; evidence provided by the source in support of the opinion; consistency of the opinion with the record as a whole;

---

[4] Additionally, Plaintiff asserts in a conclusory manner that the RFC "did not evaluate Plaintiff's combination of impairments[.]" [ECF No. 17 at 11]  Because Plaintiff neither develops nor supports this statement  in her discussion of her claims, the Court does not address it.

and the source's level of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). Whether the ALJ grants a treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)).

Plaintiff first visited Dr. Wilford in November 2015 for the purpose of "consolidating her care." (Tr. 949) Plaintiff explained that she had seen "multiple specialists," informed Dr. Wilford of her recent interstitial cystitis diagnosis, and described her history of hyperlipidemia, hypothyroidism, nonalcoholic steatohepatitis, obesity, chronic pain, chronic nausea, irritable bowel, back and joint pain, and heat and cold intolerance. (Tr. 949) Upon examination, Dr. Wilford noted that Plaintiff's neck, heart, carotid pulses, breathing, bowel sounds, sensory exam, and mood and affect were normal. (Tr. 952) Dr. Wilford observed "no peripheral edema," "normal gait," "no joint swelling," "normal movements of all extremities," and normal muscle strength and tone. (Id.) Dr. Wilford recommended weight loss, continued Plaintiff's pain medications, ordered tests for Plaintiff's thyroid, and directed Plaintiff to follow up with Nurse Practitioner ("NP") Becky Reed. (Tr. 953)

One month later, Plaintiff followed up with NP Reed. (Tr. 942) Plaintiff reported losing eight pounds with diet and exercise, but she complained of swollen fingers, pain in her right hip, and fatigue. (Id.) Plaintiff's heart, breathing, gait, range of motion, and affect were normal. (Tr. 944) NP Reed recommended Plaintiff continue taking levothyroxine for hyperthyroidism/fatigue. (Tr. 945) At a follow-up appointment with NP Reed in January 2016, Plaintiff reported swollen fingers and joints, swelling and pain in her left arm pit, and rectal bleeding, but NP Reed noted that Plaintiff's "[p]hysical exam is relatively negative." (Tr. 937, 940) NP Reed ordered a CBC platelet differential, which showed high levels of RBC. (Tr. 1277)

Plaintiff returned to Dr. Wilford's office in February 2016. (Tr. 1284) Plaintiff's primary complaints were "chronic pain" in her right knee and hip, as well as fatigue. (Id.) A physical examination revealed "positive piriformis tender point on the right," tenderness on the "superior pole of the patella," pain with flexion and extension, and "a positive patellofemoral apprehension test, but a negative anterior drawer sign." (Tr. 1287) Dr. Wilford prescribed Plaintiff Lexapro for depression, ordered x-rays of Plaintiff's right hip and knee, continued Plaintiff's Humira, recommended use of a heating pad, and encouraged Plaintiff "to remain active and watch her diet." (Tr. 1288) Plaintiff's x-rays revealed arthralgia of her right hip, minimal tibial spine spurring, and small joint effusion in her right knee. (Tr. 1296)

Dr. Wilford completed a medical source statement ("MSS") for Plaintiff the same day. (Tr. 1280-83) In the MSS, Dr. Wilford stated that Plaintiff suffered the following impairments: fibromyalgia, rheumatoid arthritis, myalgia and myositis, osteoarthritis, asthma, and carpal tunnel syndrome. (Tr. 1280) Dr. Wilford opined that Plaintiff was able to occasionally lift/carry less than ten pounds and stand, walk, or sit less than two hours in an eight-hour workday. (Id.) Dr. Wilford further stated that Plaintiff could: sit twenty minutes before changing positions; stand fifteen minutes before changing positions; and walk ten to fifteen minutes. (Id.) In response to the question, "How *often* must your patient *walk around* [in an eight-hour workday],?" Dr. Wilford wrote: "> 20 times." (Id.) Plaintiff would, according to Dr. Wilford, also need to lie down two to three times per day and take unscheduled breaks of fifteen to twenty minutes more than five times per day. (Tr. 1280, 1283) Dr. Wilford estimated that Plaintiff would miss four or more days of work per month, and he limited her to occasional twisting, stooping, bending, climbing stairs, reaching, handling, fingering, feeling, and pushing/pulling. (Tr. 1281)

Plaintiff presented to Dr. Wilford in June 2016 requesting "a letter to be able to keep Medicaid." (Tr. 242) Plaintiff complained of frequent urination and incontinence, muscle weakness, and pain in her joints, back, and muscles. (Tr. 246) In his treatment notes, Dr. Wilford wrote: "Not entirely sure whether or not she is disabled or not, however she does have multiple issues that could result in disability. There are many people that have similar issues that do continue to work however her personal situation may be different." (Id.) Plaintiff's physical examination was normal. (Id.) When Plaintiff returned to Dr. Wilford's office for a follow-up visit later that month, he noted that Plaintiff's "chronic pain continues to be overall well controlled with Cymbalta and ampitriptyline." (Tr. 235)

The ALJ thoroughly reviewed Plaintiff's testimony and medical records and determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence[.]" (Tr. 29) In particular, the ALJ found that, despite Plaintiff's "allegations of severe limitations," Plaintiff's "objective findings on medical examination are relatively mild," "[m]ost of her mental and physical examinations are within normal limits," and "flares of her conditions are not as frequently documented as her testimony suggests." (Id.) Based on her review, the ALJ determined Plaintiff had the RFC to perform light work with the following limitations:

> [N]ever climb ladders, ropes or scaffolds or be exposed to unprotected eights; occasionally climb stairs or ramps; occasionally stoop, kneel or crouch but never crawl; could perform tasks that require frequent handling or fingering with either hand, but only occasional reaching over head with either upper extremity; limited to remembering and carrying out simple routine tasks and making simple work-related decisions; would not perform production paced tasks, but would meet end day goals; frequent contact with supervisors and co-workers, but only occasional contact with the public; need to avoid concentrated exposure to fumes, odors, gasses or pulmonary irritants and extreme cold; require a sit/stand option that allows Plaintiff to shift position hourly while remaining on task.

(Tr. 28)

In formulating Plaintiff's RFC, the ALJ characterized Dr. Wilford as a "treating provider," but assigned his MSS "little weight." (Tr. 32) The ALJ explained: "Dr. Wilford's assessment of the claimant's work-related abilities was somewhat extreme and not supported by the generally mild and minor findings and treatment records." (Id.) Acknowledging that Plaintiff's rheumatoid arthritis and fibromyalgia had "recently been somewhat worsened," the ALJ noted that Plaintiff was receiving treatment for those impairments and "the record does not support that those impairments will be permanently at the level of severity that they were in late 2015 and early 2016." (Id.)

The ALJ also discredited Dr. Wilford's opinion because he "indicates that the claimant's diagnoses limit her, but he does not site to the specific findings in his medical records to support those diagnoses, and . . . most of those findings are mild and minor." (Id.) As to Dr. Wilford's opinion that Plaintiff would frequently miss work, the ALJ stated: "[t]here was no evidence of such frequent flares of the claimant's conditions that would cause her to be absent four days or more per month." (Id.) The ALJ also challenged Dr. Wilford's limitations on Plaintiff's ability to reach, handle, and finger, because "the only findings in the record with regard to carpal tunnel were evidence of her past surgery." (Id.) To the extent that Plaintiff's impairments limited use of her arms and hands, the ALJ reasoned that "the reaching, handling, and fingering limitations set out in the [RFC] will accommodate the limited objective findings."[5] (Id.)

---

[5] The ALJ also discredited Dr. Wilford's MSS because the "physician's hours do not total an eight-hour day." (Tr. 32) In reaching this conclusion, the ALJ incorrectly stated that Dr. Wilford "says the claimant will need to lie down for two to three *hours* during the eight-hour day." (Id.) (emphasis added) Defendant concedes that the ALJ "misread Dr. Wilford's statement that she needed to lie down two to three 'times.'" [ECF No. 22 at 6]

The Court finds that the ALJ gave proper weight to Dr. Wilford's MSS. Nothing in Dr. Wilford's treatment notes support his statements that Plaintiff would need to walk around more than twenty times per day, lie down two to three times per day, take more than five unscheduled breaks per day, and miss four or more days of work per month. To the contrary, Dr. Wilford's notes reflected that, in November 2015, Plaintiff's gait and musculoskeletal exam were normal. In February 2016, x-rays showed that the osteoarthritis in Plaintiff's right hip was similar to imaging from December 2013 and, although she had minor spurring and small joint effusion in her knee, physical examination showed that sensation was intact, motor strength was 5/5, and she had a full range of motion. "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006)).

Furthermore, the Court notes that the ALJ's prediction that Plaintiff's pain from rheumatoid arthritis and fibromyalgia "will not be permanently at the level of severity that they were in late 2015 and early 2016" is borne out by the later medical records. At Plaintiff's most recent appointment with Dr. Wilford in June 2016, he observed that Plaintiff's pain was well-controlled. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)).

Plaintiff urges the Court to remand her case because, aside from Dr. Wilford's MSS, the record contained no medical opinion evidence supporting the RFC. The absence of opinion evidence does not undermine an ALJ's RFC determination where other medical evidence in the record supports the finding. See Cox v. Astrue, 495 F.3d 614, 619–20 (8th Cir. 2007); see also Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence not fatal to RFC

determination where ALJ properly considered available medical and testimonial evidence). The ALJ was not required to rely entirely on a particular physician's opinion. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011).

To the extent Plaintiff challenges the ALJ's failure to address all of the non-controlling factors found in 20 C.F.R. §§ 404.1527(c), 416.927(c), "the ALJ is not required to cite specifically to the regulations but need only clarify whether he discounted the opinions and why." Dames v. Berryhill, 2018 WL 1455862, at *5 (E.D. Mo. March 23, 2018). See also Grable v. Colvin, 770 F.3d 1196, 1201-02 (8th Cir. 2014).

Finally, the Court notes that Dr. Wilford's opinion is a checklist form. See Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little or no elaboration."). The Court finds substantial evidence in the record to support the ALJ's decision to assign Dr. Wilford's opinion little weight.

### C. State disability determination

Plaintiff claims the ALJ "did not give adequate weight to the state agency's determination that Plaintiff is permanently and totally disabled." [ECF No. 17 at 14] More specifically, Plaintiff asserts that the state agency's decision merited greater weight because the requirements for Medicaid and Social Security are substantially the same. Defendant counters that the ALJ "was not bound by Plaintiff's Medicaid eligibility." [ECF No. 22 at 10]

Government agency decisions are evidence that "cannot be ignored and must be considered" by the Commissioner. 20 C.F.R. §§ 404.1504, 416.912(b)(5) ("evidence" includes governmental agency decisions); SSR 06-03(p), 2006 WL 2329939, at * 6 (Soc. Sec. Admin. Aug. 9, 2006). However, an ALJ "is not bound by the disability rating of another agency when

[s]he is evaluating whether the claimant is disabled for purposes of social security benefits." Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006). See also Biggerstaff v. Berryhill, No. 4:16-CV-67-JMB, 2017 WL 411366, at *9 (E.D. Mo. Jan. 31, 2017); Henson v. Berryhill, No. 4:16-CV-952-NCC, 2017 WL 4280657, at *6 (E.D. Mo. Sept. 27, 2017).

In June 2013, the Missouri Department of Social Services issued a decision and order finding that Plaintiff was "permanently and totally disabled for one (1) year or longer and is medically eligible for [MO HealthNet] benefits." (Tr. 445) In June 2016, the Missouri Department of Social Services held another hearing and again determined that Plaintiff was "permanently and totally disabled." (Tr. 265-68)

The ALJ considered the 2013 state agency decision but assigned it "little weight" because "the standards used by the State are different than the standards set out for Social Security benefits." (Tr. 33) Further, the ALJ discredited the state agency's decision because there was "no indication in the record that the State decision utilized a work-related function by function analysis" and there was "little support cited in the decision for the findings." (Id.) The ALJ properly considered and discussed the underlying medical evidence and explained her reasons for discrediting the determination that Plaintiff was disabled.

## IV.  *Conclusion*

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of February, 2019